UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


|                                        |   |                        |
|----------------------------------------|---|------------------------|
| AMBROSE TOEKULAH,                      | ) |                        |
|     Plaintiff      | ) |                        |
|                                        | ) |                        |
| v.                                     | ) | C.A. No. 20-CV-40155   |
|                                        | ) |                        |
| JOSEPH MITCHELL, RUDY OGANDO           | ) |                        |
| PEREZ, and WALMART, INC.,              | ) |                        |
| fka WAL-MART STORES, INC.,             | ) |                        |
|     Defendants     | ) |                        |
|                                        | ) |                        |

NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE
COURT TO THE UNITED STATES DISTRICT COURT

Defendant City of Worcester Police Officer Joseph Mitchell (hereinafter, Officer Mitchell),
hereby files this Notice of Removal, pursuant to 28 U.S.C. §§ 1441(a) and (b) and 1446, to remove
the above-captioned case now pending in the Superior Court, Department of the Trial Court,
Commonwealth of Massachusetts, in and for the County of Worcester.  As grounds for the
removal, Officer Mitchell states the following:

    1.    On October 23, 2020, this action was filed in the Superior Court of Worcester
County, Massachusetts, as Civil Action No. 2085CV1163B, arising out the arrest of Plaintiff on
November 21, 2019, at Walmart, 25 Tobias Boland Way, Worcester, Massachusetts.  On
November 2, 2020, Plaintiff filed an Amended Complaint which cites to a federal civil rights cause
of action whereby Plaintiff alleges he was unlawfully restrained by Officer Mitchell and the other
Defendants "in violation of the rights guaranteed to him by the Fourth, Fifth and Fourteenth
Amendments" and that the actions of Officer Mitchell and the other Defendants "interfered with
[his] exercise and enjoyment of the rights secured by the constitution [sic] of the United States."
(Plaintiff's Amended Complaint, ¶ 108, attached hereto as Exhibit 1).  Thus, as the Amended

Complaint asserts a federal civil rights claim, Officer Mitchell files this Notice of Removal to federal court.

2.      Process was served on Officer Mitchell on November 17, 2020. (See Worcester Superior Court Docket, which will be included as part of State Court Record). Upon information and belief, Plaintiff served Defendant Walmart on November 18, 2020. Upon information and belief, Plaintiff has attempted service on Defendant Rudy Ogando Perez.

3.      This action is a civil action brought by Plaintiff, in which he seeks, among other things, to recover damages he allegedly suffered when Officer Mitchell and the other Defendants allegedly violated his civil rights under the United States Constitution, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, state statutes and common law. (Plaintiff's Amended Complaint, ¶ 108).

4.      The action is one of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 and 42 U.S.C. § 1983, and is one which may be removed to the District Court by Officer Mitchell pursuant to the provisions of 28 U.S.C. § 1441(a) and (b) in that it is a civil action containing claims or rights arising under the laws of the United States.

5.      This notice is filed within thirty days after Officer Mitchell was served with the Plaintiff's Complaint.

6.      Copies of all process, pleadings, and orders either served upon Officer Mitchell or filed in the State Court action will be filed herein. (See State Court Record).

WHEREFORE, Officer Mitchell, hereby gives notice that this action is removed from the Worcester Superior Court to this Court.

JOSEPH MITCHELL

By his attorneys,

Michael E. Traynor
City Solicitor

*/s/ Kevin M. Gould*
Kevin M. Gould (BBO# 661545)
Wendy L. Quinn (BBO# 653954)
Assistant City Solicitors
City Hall, Room 301
455 Main Street
Worcester, MA  01608
(508) 799-1161
gouldk@worcesterma.gov
quinnwl@worcesterma.gov

CERTIFICATE OF SERVICE

I, Kevin M. Gould, hereby certify that on this 14th day of December, 2020, the within Notice of Removal of Civil Action From State Court to the United States District Court was served upon counsel for the Plaintiff by mailing a copy of the same, first-class mail, postage prepaid, to James P. McKenna, Esquire, P.O. Box 541, North Grafton, Massachusetts 01536.

*/s/ Kevin M. Gould*
Kevin M. Gould
Assistant City Solicitor

# EXHIBIT 1

# COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS

WORCESTER SUPERIOR COURT.
No.

AMBROSE TOEKULAH )
    Plaintiff, )
            )
v. )
            )
JOSEPH MITCHELL, )
and )
RUDDY OGANDO PEREZ, )
and )
WALMART, INC., )
    fka WAL-MART STORES, INC. )
    Defendants.

AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL.

---

## The Parties

1.    Plaintiff Ambrose Toekulah is a resident of Worcester, Massachusetts.

2.    At all times relevant hereto, Defendant Joseph Mitchell was both a duly appointed and sworn police officer employed by the City of Worcester and an agent of Defendant Walmart, Inc, formerly know as Wal-Mart Stores, Inc..

3.    Defendant Mitchell's usual places of business in the foregoing capacities were, respectively, 9-11 Lincoln Square, Worcester, Worcester County, Massachusetts and 25 Tobias Boland Way, Worcester, Worcester County, Massachusetts.

4.    The actions of Defendant Mitchell described herein were undertaken both in his capacity as a police officer employed by the City of Worcester and as an agent of Defendant Walmart, Inc.

5.    Defendant Mitchell is being sued in his individual capacity and in his capacity as an agent of Defendant Walmart, Inc.

6. At all times relevant hereto, Defendant Ruddy Ogando Perez' usual place of business was the Walmart store at 25 Tobias Boland Way, Worcester, Worcester County, Massachusetts.

7. At all relevant times, Defendant Perez was an employee of Defendant Walmart, Inc.

8. At all relevant times, Defendant Perez was acting within the scope of his duties as an employee of Defendant Walmart, Inc.

9. At all relevant times, Defendant Perez was motivated, at least in part, by a purpose to serve his employer, Defendant Walmart, Inc.

10. Defendant Perez is being sued in his individual capacity and his capacity as an employee of Defendant Walmart, Inc.

11. Defendant Walmart, Inc., is a foreign corporation with a principal place of business of 708 SW 8th Street, Bentonville, Benton County, Arkansas and with a place of business at 25 Tobias Boland Way, Worcester, Worcester County, Massachusetts.

12. Defendant Walmart, Inc., is being sued in its capacity as the employer of Defendant Perez.

## The Facts

13.    On November 21, 2019, Mr. Toekulah properly purchased items at a store owned and operated by Defendant Walmart, Inc., in Worcester, Massachusetts.

14.    Mr. Toekulah paid for every single one of those items and put them into a shopping cart, without using Walmart bags, and sought to leave the store.

15.    Upon payment for those items, Mr. Toekulah had received two receipts.

16.    As Mr. Toekulah was leaving the store, he was approached by Defendant Mitchell.

17.    At that time, Defendant Mitchell was off-duty as a Worcester Police Officer and working for Defendant Walmart, Inc., as a security officer.

18.    Defendant Mitchell, who was dressed as a police officer, stopped Mr. Toekulah and asked about the merchandize in the shopping cart.

19.    In response, Mr. Toekulah gave Defendant Mitchell both receipts, which receipts established that he had paid for every single item in that cart.

20.    Despite the fact that the receipts established that Mr. Toekulah had done nothing wrong – but rather had paid for everything in the cart – Defendant Mitchell compelled Mr. Toekulah to go to a windowless security office.

21.    In light of the fact that he had done absolutely nothing wrong and had to get to work, Mr. Toekulah objected, appropriately, to being required to go to the security office, yet complied with Defendant Mitchell's commands.

22.    Defendant Mitchell gave the receipts to Defendant Perez who, at all relevant times, acted jointly with Defendant Mitchell.

23. Defendant Perez went with Mr. Toekulah and Defendant Mitchell to the security office, bringing both receipts.

24. In the security office, Defendant Mitchell required Mr. Toekulah to sit and stay on a bench.

25. While Mr. Toekulah was restrained, Defendant Mitchell and Defendant Perez compared the receipts to the contents of the cart.

26. By means of such comparison, Defendant Mitchell and Defendant Perez confirmed that Mr. Toekulah had paid for each item in the cart.

27. Upon seeing that such defendants had determined that he had paid for everything in the cart, Mr. Toekulah suggested that he be allowed to leave.

28. Rather than apologize to Mr. Toekulah for detaining him, Defendants Mitchell and Perez jointly threw him up against a wall in the security office and handcuffed him.

29. Defendant Mitchell then caused Mr. Toekulah to be arrested and undergo the booking process.

30. Following the foregoing, Mr. Toekulah only secured his release from confinement by paying $40.00 in bail.

31. Defendant Mitchell wrote a police report that included the knowingly false material representation that, upon being initially stopped, Mr. Toekulah had given him only one of the two receipts.

32.     In his police report, Defendant Mitchell included the knowing false material representation that, following the initial stop, Mr. Toekulah had handed him "a single receipt which had less items on it compared to what was actually in his shopping cart."

33.     In his police report, Defendant Mitchell represented, falsely, that upon being initially stopped, Mr. Toekulah had caused a "loud commotion."

34.     By means of such representations, Defendant Mitchell was able to secure charges of disturbing the peace, disorderly conduct and resisting arrest against Mr. Toekulah.

35.     Mr. Toekulah was compelled to go to Worcester District Court for an arraignment on those charges on November 22, 2019.

36.     Mr. Toekulah was required to return to court again to face the criminal charges on both January 7, 2020, and January 27, 2020.

37.     On September 14, 2020, Mr. Toekulah filed a motion to dismiss the criminal charges brought against him.

38.     The motion to dismiss was premised upon the proposition that the charges against Mr. Toekulah were founded in police misconduct, not fact.

39.     In the motion to dismiss, Mr. Toekulah claimed that the police officer (Defendant Mitchell) obtained the charges against him by means of willfully false statements in his police report.

40.     Mr. Toekulah was born in Liberia and is African.

41.     In the memorandum in support of his motion to dismiss, Mr. Toekulah made the point that, upon receiving the two receipts, "it would have been wholly appropriate had Officer Mitchell thanked Mr. Toekulah for his cooperation and let him go on his way. But Mr. Toekulah is African. Rather than let Mr. Toekulah go to work, Officer Mitchell insisted that he go into a windowless security office."

42.     Also in that memorandum, Mr. Toekulah noted that "[i]n his report, Officer Mitchell claimed that being forced to go to the security office 'enraged the male,' as though he were talking about an animal in a zoo, not a man."

43.     Mr. Toekulah stands by the foregoing contentions of his motion to dismiss.

44.     In addition, Mr. Toekulah respectfully would make the point that, had he not been African but rather had been white, he would not have been subject to the unlawful detention.

45.     In the motion to dismiss, Mr. Toekulah claimed that the falsity of Defendant Mitchell's statements was established beyond question in the video that accompanied such motion.

46.     In fact, surveillance videos establish the material falsity of Defendant Mitchell's representations.

47.     One such video depicts the circumstances at the time of and after Defendant Mitchell's stop of Mr. Toekulah.

48.     In material part, that video shows Defendant Mitchells holding two receipts, one in each hand.

49.   In his police report, Defendant Mitchell falsely claimed that at such time he had had only one of the receipts because Mr. Toekulah had refused to give him the second, writing "Ambrose then handed me a single receipt which had less items on it compared to what was actually in his shopping cart. I then asked Ambrose if he had a second receipt which he said I am not giving you anything else."

50.   By showing that Defendant Mitchell had both receipts, the video established that his police report had been materially false.

51.   Further, that video established that Defendant Mitchell's claims as to Mr. Toekulah becoming "enraged" and causing a "loud commotion" were factually unfounded.

52.   Defendant Mitchell constructed his police report in a manner designed to obtain the criminal charges against Mr. Toekulah.

53.   Among the reasons Defendant Mitchell sought criminal charges against Mr. Toekulah was so as to conceal the fact that the detention of Mr. Toekulah had been unjustified.

54.   That unlawful detention had been undertaken jointly by Defendant Mitchell and Defendant Perez.

55.   The assault upon Mr. Toekulah by Defendant Mitchell and Defendant Perez had taken place during that detention.

## False imprisonment

56.  Paragraphs 1 through 55 are respectfully incorporated herein.

57.  The shopkeeper's privilege recognized by G.L. c. 231, § 94B, warranted Defendant's initial stop and questioning of Mr. Toekulah.

58.  The privilege to stop and question Mr. Toekulah ended once he gave Defendant Mitchell the receipts for the merchandise in the cart.

59.  Defendant Mitchell had no right or privilege to compel Mr. Toekulah to go to the security office.

60.  Defendant Mitchell and Defendant Perez had no right or privilege to detain Mr. Toekulah once they determined that he had paid for every item in the cart.

61.  Defendant Mitchell and Defendant Perez did jointly detain Mr. Toekulah despite having no right or privilege to do so.

62.  Defendant Mitchell alleged falsely in his police report that Mr. Toekulah had only given him one receipt so as to make it appear that he and Mr. Perez had not acted improperly toward Mr. Toekulah.

63.  Defendant Mitchell secured false criminal charges against Mr. Toekulah so as to conceal the fact of the false imprisonment of Mr. Toekulah, which had been jointly undertaken by Defendant Mitchell and Defendant Perez.

64.  Defendants Mitchell and Perez jointly and intentionally detained Mr. Toekulah in the security office.

65. Since Mr. Toekulah had provided Defendant Mitchell with receipts that established that he had paid for everything in the cart, doing so before being compelled to go to the security office, the entire detention of Mr. Toekulah in that office was unlawful.

66. Defendants Mitchell and Perez continued their confinement of Mr. Toekulah after determining that he had paid for each item in the cart, doing so with no right or privilege.

67. Defendants Mitchell and Perez each confined Mr. Toekulah directly and as joint venturers.

68. Mr. Toekulah was conscious throughout the unlawful detention.

69. Since Defendant Perez' conduct in this regard was within the course of his employment with Defendant Walmart, Inc., and in furtherance of such employer's work, pursuant to the doctrine of *respondeat superior*, Defendant Walmart, Inc., is liable for the consequent damages.

### Malicious Prosecution

70. Paragraphs 1 through 69 are respectfully incorporated herein.

71. In light of the fact that Defendant Mitchell knew that the criminal charges brought against Mr. Toekulah were factually unfounded, the institution of criminal process against Mr. Toekulah was with malice.

72. Defendant Mitchell made the aforementioned false material statements in his police report because, in truth, there was no probable cause to institute criminal proceedings against Mr. Toekulah.

73.    Given the falsity of Defendant Mitchell's representations in his police report, on the day scheduled for a hearing on the motion to dismiss the Commonwealth filed a *nolle prosequi*, ending the false criminal case against Mr. Toekulah.

74.    In doing so, the Worcester County District Attorney's Office maintained the highest standards of professionalism and integrity.

75.    In that context, the entry of such a nolle prosequi was consistent with the factual innocence of Mr. Toekulah.

76.    Thus, the criminal proceedings were terminated in favor of Mr. Toekulah.

## Assault and battery by means of a dangerous weapon, to wit: handcuffs.

77.    Paragraphs 1 through 76 are respectfully incorporated herein.

78.    The detention of Mr. Toekulah following his tender of the receipts to Defendant Mitchell was unlawful.

79.    During that detention, neither Defendant Mitchell nor Defendant Perez had any right or privilege to continue the termination of his freedom of movement.

80.    During that detention, neither Defendant Mitchell nor Defendant Perez had any right or privilege to apply any force to Mr. Toekulah's person.

81.    Upon the confirmation by such defendants of the fact that Mr. Toekulah had paid for everything in the cart, Mr. Toekulah suggested reasonably that he should be allowed to leave.

82.    Acting in concert, however, Defendants Mitchell and Perez then assaulted Mr. Toekulah.

83.   Both Defendant Mitchell and Defendant Perez committed that assault intentionally and by means of a dangerous weapon, to wit, handcuffs..

84.   As joint venturers, Defendant Mitchell and Defendant Perez assaulted Mr. Toekulah by means of the handcuffs by which he was then further restrained.

85.   Since Defendant Perez' conduct in this regard was within the course of his employment with Defendant Walmart, Inc., and in furtherance of such employer's work, pursuant to the doctrine of *respondeat superior*, Defendant Walmart, Inc., is liable for the consequent damages.

## False arrest

86.   Paragraphs 1 through 85 are respectfully incorporated herein.

87.   Defendant Mitchell caused Mr. Toekulah to be arrested upon unfounded allegations.

88.   Defendant Mitchell caused Mr. Toekulah to be arrested notwithstanding the fact that he knew there was no probable cause for such arrest.

89.   Defendant Mitchell caused criminal charges to be brought against Mr. Toekulah despite knowing that, in material part, Mr. Toekulah had not engaged in the conduct alleged in his police report.

90.   Defendant Mitchell wrote a police report centered upon materially false statements as to the conduct of Mr. Toekulah.

91.   By means of that report Defendant Mitchell caused unfounded criminal charges to be brought against Mr. Toekulah.

92.    Defendant Mitchell caused such charges to be brought in an effort to conceal the unlawful restraint of Mr. Toekulah perpetrated by Defendant Mitchell and Defendant Perez.

93.    The arrest of Mr. Toekulah caused by Defendant Mitchell constituted a governmental termination of freedom of movement through means intentionally applied.

94.    Defendant Perez participated as a joint venturer with Defendant Mitchell in the seizure and unlawful detention of Mr. Toekulah.

95.    In that regard, Defendant Perez and Defendant Mitchell acted jointly in pushing Mr. Toekulah against a wall and handcuffing him.

96.    Defendant Perez undertook such activity during the course of his employment with Defendant Walmart, Inc.

97.    Defendant Perez undertook such activity in an effort to advance the interests of Defendant Walmart, Inc.

98.    At the time he caused Mr. Toekulah's arrest, Defendant Mitchell knew that, when Mr. Toekulah had objected to being brought to the security office, there was no peace to disturb; rather, there was an ongoing unlawful detention.

99.    At the time he caused Mr. Toekulah's arrest, Defendant Mitchell knew that, in the context of the unlawful detention, Mr. Toekulah's conduct had not been disorderly.

100. At the time he caused Mr. Toekulah's arrest, Defendant Mitchell knew that Mr. Toekulah had not used or threatened to use physical force or violence against Defendant Mitchell or Defendant Perez and had not used any other means which created a substantial risk of causing bodily injury to either such defendant.

101. Defendant Mitchell's decision to arrest Mr. Toekulah was not grounded upon a judgment in good faith.

102. Since Defendant Perez' conduct in this regard was within the course of his employment with Defendant Walmart, Inc., and in furtherance of such employer's work, pursuant to the doctrine of *respondeat superior*, Defendant Walmart, Inc., is liable for the consequent damages.

### Massachusetts Civil Rights Act
### Massachusetts General Laws Chapter 112, Section 11H-I

103. Paragraphs 1 through 102 are respectfully incorporated herein.

104. Defendant Mitchell violated Mr. Toekulah's rights under the Massachusetts Civil Rights Act by causing the illegal search and seizure of Mr. Toekulah.

105. Defendant Perez violated Mr. Toekulah's rights under the Massachusetts Civil Rights Act by participating as a joint venturer with Defendant Mitchell in the illegal seizure of Mr. Toekulah.

106. Defendant Perez committed such violation while acting within the scope of his employment with Defendant Walmart, Inc.

107. Defendant Perez undertook the activity that constituted such violation with the intent to advance the interests of Defendant Walmart, Inc.

13

108. By unlawfully restraining Mr. Toekulah with coercion in violation of the rights guaranteed him by the Fourth, Fifth and Fourteenth Amendments, Defendant Mitchell and Defendant Perez interfered with Mr. Toekulah's exercise and enjoyment of the rights secured by the constitution of the United States.

109. The actions of Defendant Mitchell and Defendant Perez in such regard breached Mr. Toekulah's rights for purposes of the Massachusetts Civil Right statute.

110. Since Defendant Perez' conduct in this regard was within the course of his employment with Defendant Walmart, Inc., and in furtherance of such employer's work, pursuant to the doctrine of *respondeat superior*, Defendant Walmart, Inc., is liable for the consequent damages.

## Defamation *Per Se.*

111. Paragraphs 1 through 110 are respectfully incorporated herein.

112. Defendant Mitchell was at fault for the publication of the materially false statements in his police report.

113. The publication of such materially false statements reached the clerk magistrate who would issue the criminal complaint against Mr. Toekulah.

114. Defendant Mitchell defamed Mr. Toekulah to all who read the materially false statements in the police report, including members of the Commonwealth and Court personnel.

115.    In turn, the issuance of criminal charges, which charges were grounded upon Defendant Mitchell's materially false statements, tended to hold Mr. Toekulah up to scorn, hatred, ridicule or contempt, in the minds of a considerable and respectable segment in the community, that being those who read of such charges.

116.    Defendant Mitchell's materially false statements in the police report constituted the false imputation of crimes by Mr. Toekulah.

117.    Such publication resulted in the criminal charges which were brought against Mr. Toekulah.

118.    By intentionally securing false criminal charges against Mr. Toekulah, Defendant Mitchell damaged his reputation in the community.

119.    The criminal charges obtained against Mr. Toekulah by Defendant Mitchell were capable of damaging Mr. Toekulah's reputation in the community.

## Damages

120.    Paragraphs 1 through 119 are respectfully incorporated herein.

121.    The false criminal charges brought against Mr. Toekulah were the proximate result of the above-detailed conduct of Defendants Mitchell and Perez.

122.    Though subject to *nolle prosequi*, such criminal charges are now a permanent part of Mr. Toekulah's record.

123.    The pendency of such false criminal charges delayed Mr. Toekulah's effort to obtain United States citizenship for nearly a year.

124.    Effectively, the Defendants cost Mr. Toekulah nearly a year of American citizenship.

125. Being compelled to go to the security office caused Mr. Toekulah humiliation and embarrassment.

126. Being unlawfully restrained in the security office caused Mr. Toekulah additional humiliation and embarrassment.

127. Being falsely imprisoned, falsely arrested, maliciously prosecuted and assaulted was profoundly offensive to Mr. Toekulah.

128. Being arrested and booked was humiliating, embarrassing and offensive to Mr. Toekulah.

129. Being the subject of criminal charges was humiliating, embarrassing and offensive to Mr. Toekulah.

130. Being required to go to court as a criminal defendant was humiliating, embarrassing and offensive to Mr. Toekulah.

131. Being the subject of the intentional breach of his civil rights was humiliating, embarrassing and offensive to Mr. Toekulah.

132. Being the subject of defamation *per se* was humiliating, embarrassing and offensive to Mr. Toekulah.

## Request for Relief

133. WHEREFORE, Mr. Toekulah respectfully suggests that the foregoing damages, which damages were caused by the Defendants, especially the damages proximately resulting from the conduct that caused the three false criminal charges against him and particularly because he was the victim of a series of intentional torts — which implicated his constitutional rights, have a value of $6,200,000, and respectfully requests that this Honorable Court award such amount together with all appropriate civil penalties, as well as interest on the foregoing, and all fees and costs relative to this matter, including attorney's fees, as well as such other relief as the Court deems just, with all such damages being awarded against the defendants on a joint and several basis.

## Demand for a Jury Trial.

Mr. Toekulah respectfully demands trial by jury on all issues properly so tried.

Respectfully submitted for
Ambrose Toekulah,

James P. McKenna, Esquire
BBO # 548681
James P. McKenna
Attorney at Law
P.O. Box 541
North Grafton, MA 01536
*James.P.McKenna.Esquire@aol.com*
774.317.0983

October 30, 2020

# Worcester Police Department
## Incident Narrative Report

**Narratives for Incident Number 2019000128487 ?   Yes**
**Other Narratives not authorized for print?   None**
**Narratives this user authorized to print:**

| Narrative by: Officer Joseph Mitchell |
|---|

| Date & Time | Narrative Description | Entered by | Status | Reviewed by | Last Edit Date |
|---|---|---|---|---|---|
| 11/21/2019 23:01 | | Officer Joseph Mitchell | Closed | Sgt. Ryan J. Maher | 11/21/2019 |

Arrested:

Ambrose D Toekulah
DOB: ▉▉▉▉▉
159 Austin St #2
Worcester, MA ▉▉▉▉

**CHARGES**
M.G.L. c 272 §  53 Disorderly
M.G.L. c 272 §  53 Disturbing
M.G.L. c 268 §  32 Resisting

Witness:

Ruddy Ogando Perez
25 Tobias Boland Way
Worcester, MA 01607
DOB: ▉▉▉▉▉

LT Dawkins
25 Tobias Boland Way
Worcester, MA 01607
▉▉▉▉▉

On Thursday November 21, 2019 I was working an off duty assignment at the Worcester Walmart from the hours of 1600/2400. I was wearing the full uniform of the day. At approximately 2023 hours as I was walking around the store when I observed a male, later identified as Ambrose D Toekulah. Ambrose was pushing a shopping cart full of items towards the exit. It should be noted that none of the items in his shopping cart were in bags, which raised my suspicion that this male was potentially shoplifting. As I approached the male I advised him to stop, the male continued to walk towards the exit, again I advised the male to stop and he finally did as I caught up to him.

   At this time I explained to Ambrose the reason I stopped him and asked for his receipt. Ambrose stated that he would never do that and began to become agitated, by raising his voice. As Ambrose began to raise his voice a group of customers stopped what they were doing and diverted their attention to the loud commotion. Ambrose then handed me a single receipt which had less items on it compared to what was actually in his shopping cart. I then asked Ambrose if he had a second receipt which he said I am not giving you anything else.  Ambrose's commotion which was purposefully caused began to create a public inconvenience and annoyance which served no legitimate purpose.  I explained to Ambrose that if he continued to yell and use vulgar language again he was going to be placed under arrest for disorderly and disturbing the peace. This enraged the male, at which time I realized this conversation was not going anywhere. I was able to get Ambrose to the AP Office.

Once inside the office I gave Ambrose another chance to calm down, as Asset Protection Associate Ruddy attempted to pull up the camera footage to make sure he paid. Ambrose grew impatient and stated "I am in a rush, I need to get out of here." Ambrose continued to argue then got up from the bench and attempted to storm around the office, at which point I advised him he was being placed under arrest. As I took control of his left arm he began to pull away and position himself into the corner of the office. At this time I asked APA Ruddy to assist me getting Ambrose into cuffs.

**Narratives for Incident Number 2019000128487 ?**   <u>Yes</u>
**Other Narratives not authorized for print?**   <u>None</u>
**Narratives this user authorized to print:**

Narrative by: Officer Joseph Mitchell

| <u>Date & Time</u> | <u>Narrative Description</u> | <u>Entered by</u> | <u>Status</u> | <u>Reviewed by</u> | <u>Last Edit Date</u> |
|---|---|---|---|---|---|
| 11/21/2019 23:01 | | Officer Joseph Mitchell | Closed | Sgt. Ryan J. Maher | 11/21/2019 |

Ambrose continued to resist by tensing his body and trying to pull away. Ambrose was then placed into cuffs. The wagon arrived and Ambrose was transported to the station without further incident.

_____
*Signature - Reporting Officer*

_____
*Signature - Reviewing Officer*